TRIUMPH ELECTRIC CO. v. THULLEN.

(District Court, S. E. D. Pennsylvania. December 4, 1913.)

No. 1143.

INJUNCTION (§ 136*)—PRELIMINARY INJUNCTION.

Where complainant company, engaged in the manufacture of electric motors, generators, and transformers, employed defendant as chief electrical engineer under a contract that he should devote his entire attention to the business of the company, and in the event of any design being developed, capable of being patented, the application should be assigned by defendant to the company, except that this should not apply to any patentable design defendant might discover, not applicable to the line manufactured by complainant, and defendant invented a control system for electric motors, which might be applied to the appliances manufactured by complainant, the fact that certain expert witnesses claimed that such system was a separate line from that of complainant did not show, as a matter of law, that it was within the exception of the contract, and hence complainant was entitled to a preliminary injunction restraining defendant from assigning any rights therein under the patent, or granting a license thereunder, or incumbering the same pending determination of such question.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 305, 306; Dec. Dig. § 136.*]

In Equity. Bill by the Triumph Electric Company against Louis H. Thullen. On motion for a preliminary injunction.

. Henry N. Paul, Jr., of Philadelphia, Pa., and Edwards, Sager & Wooster, of New York City, for plaintiff.

E. Hayward Fairbanks and Furth, Singer & Bortin, all of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. From the bill of complaint, it appears that the defendant was employed by the plaintiff from about November 20, 1909, until April 30, 1913, as chief electrical engineer. The agreement between the parties, which is in the form of a letter addressed to the defendant by the plaintiff, contains the following provision:

"It is mutually understood and agreed that you will devote your entire time and attention to the interests of this company; that, while in its employ in the event of any design being capable of being made the subject-matter of a patent application, such application and patent shall be assigned to the company, they paying the necessary attorney and patent office fees.

"It is understood that this does not apply to any patentable design you may discover not applicable to the line manufactured by this company."

There were two subsequent modifications of this contract as to compensation to the defendant which did not affect the provisions above cited. It is alleged in the bill that the plaintiff was, at the times mentioned, engaged in the manufacture and sale of electrical apparatus of all types and classes for many different purposes; that, while in the employ of the plaintiff, the defendant acted as its chief electrical engineer and, in pursuance of his duties as such, had supervision of the design and manufacture of electrical apparatus and systems of all kinds and for various purposes, including control systems for electric motors; that, in pursuance of his duties, he made experiments and research work, particularly in the design of control systems for electric motors in the factory and at the expense of the plaintiff, which experiments and research work led to the development and invention by the defendant of improved designs in various types and classes of apparatus and electrical systems; that, while in the employ of the plaintiff, the defendant made inventions and improvements in designs capable of being made the subject-matter of patent applications, which were applicable to the class of goods or line manufactured by the plaintiff, and made applications for patents and obtained patents thereon, particularly patent No. 1,070,638, for a control system for electrical motors, which was applied for December 11, 1912, and granted August 19, 1913; that the invention of patent No. 1,070,638 was made by the defendant in the fulfillment of his regular duties, under the terms of the agreement, and that he made application for the patent while so employed, and that apparatus embodying the system in accordance with the disclosure and claims of the patent were built in the factory and at the expense of the plaintiff, for the requirements of a customer of the plaintiff in the regular course of its business. The plaintiff claims that it is entitled to the full right, title, and interest in the invention disclosed and claimed in the patent, and has requested the defendant to assign the patent and invention to the plaintiff, and offered to pay the necessary attorney and patent fees, but the defendant has refused

to assign the patent and invention to the plaintiff, and has refused to recognize the plaintiff's right thereto. The bill contains a prayer for an assignment of the patent by the defendant to the plaintiff, and for an injunction to restrain the defendant from granting any other assignment of or any license under the patent.

Upon the facts appearing by the verified bill and affidavit of the president of the plaintiff company, a restraining order was granted November 20, 1913, restraining the defendant from making any transfer of any rights under the patent or invention, and from granting any license thereunder, or placing any incumbrances thereon, without first advising the transferee, licensee, or mortgagee of the pendency of this action and of the plaintiff's claim to title, and without first advising the plaintiff of such transfer, license, or incumbrance. At the hearing for a preliminary injunction, the plaintiff relied upon the bill and affidavit upon which the ex parte restraining order and order to show cause were issued. The defendant produced affidavits and exhibits for the purpose of showing that the invention covered by patent No. 1,070,638 comes within the terms of the paragraph of the agreement reading as follows:

"It is understood that this does not apply to any patentable design you may discover not applicable to the line manufactured by this company."

It is apparent that the final determination of the suit will turn upon the construction of the above exception to the agreement for the assignment to the plaintiff of the applications and patents of designs discovered by the defendant while in the plaintiff's employ. The defendant in his answering affidavit states that since the granting of the letters patent on August 19, 1913, he has been taking preliminary steps to organize a company to handle the patent, and he had about concluded such negotiations for the sale and disposition of the patent upon very favorable terms, when the plaintiff's bill in equity was filed, and the restraining order obtained. It is therefore apparent that if the plaintiff is ultimately successful in its claim, it will be irreparably damaged if the defendant is permitted to proceed with the sale of the patent without notice to his vendees or assignees of the plaintiff's claim to title. The defendant avers that the plaintiff is not, as alleged in the bill, engaged in the manufacture and sale of electrical apparatus of all types and classes, but is engaged in the manufacture of specific appliances as follows:

"Motors, generators, and transformers, also an induction motor, starter composed of a transformer that they manufactured which, in connection with a switch, is assembled to make the starter, and is used to start an induction motor."

In support of this averment, the defendant offered in evidence the advertising bulletins of the plaintiff covering the period from May, 1910, to May, 1913. The affidavits of the defendant and of a number of patent experts and engineers explain the mechanical construction and functions of motors, generators, and transformers, and explain in detail the mechanical construction and functions of the defendant's control system for electric motors upon which the patent was issued.

The patent is designated as a "control system for electric motors." In the defendant's specification, he says:

"My invention relates to systems for automatically controlling electric motors, and has particular reference to the control of electrically driven feed carriages for friction or other saws, but I do not limit my invention thereto."

The first claim of the patent recites:

"In a system for controlling electric motors, an electric motor, a device driven by the motor against load of varying value, and means for maintaining the resistance to the said device at a substantially constant value, the said means including means for varying the speed of the motor inversely as the value of the resistance varies."

In the defendant's affidavit he avers:

"That the control system for electrically driven feed carriages for friction or other saws, which I invented and which the plaintiff company claims to have an interest in, belongs to an art or type of apparatus which is not germane to the specialties manufactured by the plaintiff company"

—and proceeds to "show how the invention in this patent is clearly differentiated from the motors, generators, and transformers which are the output of the plaintiff company."

The conclusion of Mr. Fairbanks, one of the defendant's experts, is—

"that the system of wiring and connecting electrical devices for the purpose stated in the Thullen patent is a separate line from the manufacture of motors, generators, or transformers."

The conclusion of Mr. Bonine, a consulting engineer, is that:

"The subject-matter of Mr. Thullen's patent, as will be obvious to any skilled electrical engineer, is therefore not in any way germane or related to the specialties of the Triumph Company, plaintiff herein; said specialties being the manufacture of motors, generators, and transformers."

Mr. Jones, an electrical engineer, concludes:

"I do not consider the invention of Mr. Thullen is in any way a part of the business conducted by the plaintiff, the Triumph Electric Company, since it is a foreign construction in which a motor is incidentally used to operate a mechanical carriage, and the gist of Mr. Thullen's invention lies in a special wiring outside of a motor or anything manufactured by the plaintiff company, together with a saw carriage and other mechanical parts."

Mr. Hughes, an engineer, concludes as his opinion—

"that the apparatus disclosed in the said Thullen patent drawings, and described in the specification thereof, is not applicable to any line manufactured by the Triumph Electric Co., * * * the Thullen invention being a system of 'control' rather than anything applicable to the manufacture of the motors shown in said Defendant's Exhibit A."

Mr. Taylor, an electrical engineer, expresses his opinion—

"that this patent, in its particular sense, is not intended for application directly to the product of the plaintiff, but is for the electrical control of electrically driven feed carriages of machines."

Mr. Weir, an engineer, concludes:

"The invention disclosed by this patent does not pertain to any appliance manufactured by the plaintiff, but does pertain to controlling systems applicable to friction saws and similar apparatus."

Mr. Temple, an electrical engineer, states that:

"The subject-matter of Mr. Thullen's patent is not in any way specifically or generally related to the particular products of the Triumph Electric Company, plaintiff herein, the said products being motors, generators, and transformers."

The gist of the defendant's expert testimony is to the effect that the defendant's system for a control of electric motors is differentiated from the motors, generators, and transformers themselves, and that, inasmuch as the plaintiff is not engaged in the manufacture of controllers for electric motors, and particularly for controllers for electrically driven friction saws, it follows that the apparatus invented by him is not applicable to the line manufactured by the plaintiff company. Without prejudging the construction which may finally be put upon the agreement between the parties, I do not think that this testimony fully meets the issue presented. It is apparent that the defendant's invention covers a controller for motors whether they be designated "prime movers" as in some of the affidavits, or "apparatus" as in others. The plaintiff's electric motors, as disclosed by its bulletins, offered in evidence by the defendant, are used for operating a variety of machines such as saws, lathes, or planes, and while the defendant's claim is that his patent is for the control of friction saws and carriages, it is obvious that the control of the saw and carriage is effected through the control of the motors operating them. It is by no means certain that the "patentable design" of the defendant is "not applicable to the line manufactured by" the plaintiff. Mechanically and physically at least, a controller is capable of being applied to motors which are in the line manufactured by the plaintiff. It appears, therefore, that there is a substantial question between the parties as to the construction of the agreement between them, and there is reasonable ground in support of the plaintiff's claim that the patent in suit does not come within the exception in the agreement.

I think, therefore, that a preliminary injunction should be granted to preserve the patent in statu quo by requiring notice of any disposition of the patent until a final determination of the right and title to it. The defendant, however, should be amply protected by bond in case the plaintiff ultimately fails to establish its claim and the defendant is, by notice of the pending suit, prevented from disposing of the patent. The amount of security to be entered will be fixed upon application of the plaintiff within five days, with notice to the defendant.